UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PARAMOUNT TRANSPORTATION
LOGISTICS SERVICES, LLC,

    Plaintiff,

v.                                    Case No: 2:21-cv-831-JES-NPM

TRAFFIC TECH, INC., a
Foreign Profit Corporation,
JOSEPH SINGER, individually,
ZYREK NICOLE, Individually,
and MICHAEL FILIPUCCI,
individually,

    Defendants.

---

**OPINION AND ORDER**

    This matter comes before the Court on review of defendants' Motion to Dismiss (Doc. #31) filed on December 22, 2021. Plaintiff filed a Response in Opposition (Doc. #34) on January 21, 2022. For the reasons set forth below, the motion is granted in part and denied in part and the Amended Complaint (Doc. #26) is dismissed without prejudice and with leave to amend.

I.

    Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

II.

The operative pleading is the Amended Complaint for Injunctive Relief and Other Claims for Damages (Doc. #26) filed on December 8, 2021.  Plaintiff Paramount Transportation Logistics Services, LLC (plaintiff or Paramount) alleges that it provides supply chain and transportation management services and offers a wide range of warehousing with facilities throughout the country. (Id. at ¶ 12.)  Defendant Traffic Tech, Inc. (Traffic Tech) is a competitor who holds itself out as providing supply chain consulting, transportation management, and warehousing.  (Id. at ¶ 13.)  Paramount alleges that each of the individual defendants - Joseph Singer (Singer), Nicole Zyrek (Zyrek), and Michael Filipucci (Filipucci) – is a former employee who went to work for Traffic Tech (id. at ¶¶ 14-15) after having signed a "Non-Solicitation and Non-Disclosure and Confidentiality Agreement" (the Agreement)[1] with Paramount.  (Id. at ¶ 16.)  The relevant provisions of the Agreements are as follows:

> 3. CONFIDENTIALITY
>
> (a) Return of Information. At any time upon request by the Company and immediately upon the termination of my employment, I shall return all copies of all documents and other materials in any form that constitute, contain, refer or relate to any Confidential Information or Developments.

---

[1] The Agreement is titled as "Non-Solicitation and Non-Disclosure Agreement".  (Doc. #26, pp. 26-35.)

(b) <u>Non-Disclosure</u>. I acknowledge that the Confidential Information and information concerning the Developments are confidential and proprietary, that the unauthorized use or disclosure to any person or entity of any of the Confidential Information or information concerning the Developments will result in immediate and irreparable injury, and that such injury cannot adequately be remedied by an award of monetary relief. I shall not disclose to any person or entity at any time during or after my employment, any Confidential Information or information concerning the Developments without the prior written permission of the Company. I shall use the Confidential Information and information concerning the Developments only as necessary to perform the duties assigned to me during my employment and for no other purpose whatsoever.

4. <u>NON-SOLICITATION</u>

While I am employed by the Company, and for a period of twenty-four (24) months following my termination, regardless of whether such termination was voluntary or involuntary, with or without cause, I agree to the following:

(a) Not to directly or indirectly contact, solicit, serve, cater or provide services of any kind to any customer, client, organization, person, prospective customer, or prospective client who, or which, has had a business relationship with the Company or its affiliates, subsidiaries, customers, vendors and any related entities during the twelve (12) month period preceding my termination or with who the Company sought a business relationship during the twelve (12) month period preceding my termination;

(b) Not to directly or indirectly influence or attempt to influence any customer, client, organization or person who, or which, has had a business relationship with the Company or its affiliates, subsidiaries, customers, vendors and any related entities during the

4

>twelve (12) month period preceding my termination to direct or transfer away any business or patronage from the Company;
>
>(c) Not to directly or indirectly solicit or attempt to solicit any employee, officer or director to leave the Company or its affiliates, subsidiaries, customers, vendors and any related entities or to contact any customer or client in order to influence or attempt to influence the directing or transferring of any business or patronage away from the Company or its affiliates, subsidiaries, customers, vendors and any related entities;
>
>(d) Not to directly or indirectly interfere with or disrupt any relationship, contractual or otherwise, between the Company or its affiliates, subsidiaries, customers, vendors and any related entities, and their customers, clients, employees, independent contractors, agents, suppliers, distributors or other similar parties; and obligations hereunder.
>
>(e) To advise any and all employers or potential employers of my obligations hereunder.

(Id. at pp. 27-28.) "Confidential Information" is defined to "mean and include the Product and Service Information, the Other Information." (Id. at 22.) "Other Information" broadly includes "the names, addresses, contact persons, purchasing histories, suppliers, equipment needs and designs, purchasing frequency, prices paid and other information relating to the Company or the present and prospective customers of the Company or its affiliates, subsidiaries, customers, vendors and any related entities. . . ." (Id.) Paramount alleges that each individual defendant has

5

violated the Agreement (id. at ¶ 17) and interfered with its business relationships (id. at ¶¶ 76-85).

**III.**

Defendants argue that in Counts I, II, and III the only factual allegations of wrongful conduct are in a single paragraph relating solely to defendant Singer, with nothing but "speculation, conjecture, and conclusory statements" otherwise. Defendants further argue that the requested injunction is overbroad and would essentially prevent employment altogether. (Doc. #31, pp. 1-2.)

**A. Restrictive Covenant General Principles**

To be enforceable, a restrictive covenant must be reasonable with regard to "time, area, and line of business" and "set forth in a writing signed by the person against whom enforcement is sought." § 542.335(1)(a). Under Florida law,

> [f]or a restrictive covenant to be valid, "[t]he person seeking enforcement of [the] restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." Fla. Stat. § 542.335(1)(b). Section (1)(b) of the statute enumerates a non-exhaustive list of "legitimate business interest[s]." Among these are: (1) "[v]aluable confidential business or professional information that otherwise does not qualify as trade secrets"; (2) "[s]ubstantial relationships with specific prospective or existing customers, patients, or clients"; and (3) "[e]xtraordinary or specialized training."

6

Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223, 1231 (11th Cir. 2009). "A court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions. The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Fla. Stat. § 542.335(1)(j). See GFA Int'l, Inc. v. Trillas, 327 So. 3d 872, 877 (Fla. 3d DCA 2021).

### B. Count I: Defendant Singer

Count I alleges that Singer started employment with Paramount on or about May 11, 2015, as a Supply Chain Consultant; that he signed the Agreement on May 11, 2015; that his employment with Paramount ended on June 25, 2021; and that he then became employed by Traffic Tech in a similarly situated position performing similar duties as when he had been employed at Paramount. (Id. at ¶¶ 22-25.) Paramount alleges Singer violated Paragraph 4 of the Agreement by sending mirrored solicitation e-mails to Paramount's customers, including Beckon Worldwide, Bobst North American, Inc., Butler Performance, Cemera Parts, Blue Grass Protective Films, CleanLife Products, and Clean Control Corporation. (Id. at ¶ 28.) These emails solicited the same type of business for Traffic Tech as had been performed by Paramount (id.) and were sent within twenty-four months of Singer's separation from Paramount (id. at ¶ 29).

Count I alleges that Singer is in direct competition with Paramount and "has used" Confidential Information and Developments, including a confidential client list, in violation of the Agreement. (Id. at ¶¶ 30, 32.) Count I concludes that Singer has breached the Agreement by directly competing with Paramount by sending the solicitation emails to clients. (Id. at ¶¶ 38, 39.) Paramount seeks damages, injunctive relief, and attorney fees pursuant to the Agreement. (Id. at ¶¶ 41-45.)

The Court agrees with defendant Singer that most of Count I fails to state a claim upon which relief may be granted. First, while Count I refers to the Agreement as "the Non-Compete, Non-Solicitation and Non-Disclosure Agreement" (id. at ¶ 37), nothing in the Agreement precludes post-employment competition. Therefore, sending the solicitation emails did not violate the Agreement because it was in direct competition with Paramount. The request to enjoin Singer (and Zyrek and Filipucci) from "directly or indirectly, engaging in a business as an owner, partner or agent; taking employment with a third party engaged in such business either as an employee, contractor or consultant" is not supported by the Agreement, and that portion of Count I based on competition is dismissed. (Id. at ¶¶ 38, 45, 55, 64, 74-75, 84.)

Second, Count I states in a merely conclusory fashion that Singer "has used" Paramount's Confidential Information and

8

Developments, without stating any facts which would make the allegation plausible. (Id. at ¶ 32.) Nothing in Count I would justify an inference that the named customers came from a confidential client list, and there is no other indication of "use" of confidential information which would violate the Agreement. Plaintiff's "information and belief" allegation in ¶ 20 and its allegation of inevitability are insufficient.

Third, the alleged violation of Paragraph 3 of the Agreement merely states that Singer has "direct knowledge" of Paramount's confidential information. (Id. at ¶ 35.) There are no facts alleged which would bring Singer's conduct of mere knowledge within the scope of paragraph 3's confidentiality and non-disclosure obligations. As discussed, Paragraph 20 is not sufficient to state a plausible claim.

Count I alleges that Singer violated the non-solicitation covenant by sending solicitation e-mails to specific Paramount customers within 2 years of leaving Paramount. (Id. at ¶¶ 28-29.) Paramount identified specific customers and the content of the emails. The Court finds this minimally sufficient to state a plausible claim of solicitation in violation of the Agreement.

 **B. Count II: Defendant Zyrek**

Count II alleges that Zyrek started employment with Paramount on or about August 20, 2017, as a Supply Chain Consultant; that she signed an Agreement on August 20, 2017; that her employment

9

with Paramount ended on February 26, 2021; and that she then became employed by Traffic Tech in a similarly situated position performing similar duties as when she had been employed at Paramount. (Id. at ¶¶ 47-50.) Paramount alleges Zyrek has "breached the Non-Compete Agreement" by directly competing with Paramount by providing identical services to a direct competitor as he had performed for Paramount. (Id. at 55.) Paramount further alleges that Zyrek has breached the Agreement by directly sending Paramount's clients solicitation communications for the purpose of taking clients to Traffic Tech. (Id. at ¶ 56.) Count II also alleges that Zyrek "has used" Confidential Information and Developments, including a confidential client list, to the detriment of and in direct competition with Paramount, in violation of the Agreement. (Id. at ¶ 57.) Paramount also alleges that Zyrek "has direct knowledge of" Paramount's trade secrets and other confidential information entitled to protection, and as such has violated Paragraph 3 of the Agreement. (Id. at ¶58.) Paramount seeks damages, injunctive relief, and attorney fees pursuant to the Agreement. (Id. at ¶¶ 61-64.)

As with Singer, the Agreement does not prohibit competition by Zyrek. Therefore, the claim based on alleged competition and seeking an injunction for "directly or indirectly, engaging in a business as an owner, partner or agent" must be dismissed. (Id., ¶¶ 55, 64.)

Unlike the Singer allegations, Paramount does not identify specific clients or disclose the form or content of the "solicitation communications". Paramount simply states that it was for the "purpose of taking" the clients to Traffic Tech. (Id., ¶ 56.) The non-solicitation provision in the Agreement provides that there should be no direct or indirect contact or solicitation of a client or prospective client from Paramount. (Id., p. 28.) The Court finds that a plausible claim has not been stated because of the absence of factual allegations.

Like the Singer allegations, the Court finds the allegations that Zyrek "has used" confidential information and "has direct knowledge of" trade secrets are not sufficient to state a plausible claim since "direct competition" is not barred. (Id., ¶¶ 57, 58.) Plaintiff's "information and belief" allegation in ¶ 20 and its allegation of inevitability are insufficient.

**C. Count III: Defendant Filipucci**

Count III alleges that Filipucci started on or about May 11, 2015, as a Logistics Team Leader; that he signed an Agreement on May 11, 2015; that his employment with Paramount ended on June 25, 2021; and that he then became employed by Traffic Tech in a similarly situated position performing similar duties as when he had been employed at Paramount. (Id. at ¶¶ 66-69.) Paramount alleges Filipucci breached the Agreement by contacting Paramount's customers to obtain their business (id. at ¶ 72) and by directly

11

competing with Paramount by providing identical services to a direct competitor as he had performed for Paramount (id. at 75). Paramount further alleges that Filipucci breached the Agreement by directly sending Paramount's clients solicitation communications for the purpose of taking clients to Traffic Tech. (Id. at ¶ 76.) Count III also alleges that Filipucci "has used" Confidential Information and Developments, including a confidential client list, to the detriment of and in direct competition with Paramount, in violation of the Agreement. (Id. at ¶ 78.) Paramount also alleges that Filipucci "has direct knowledge of" Paramount's trade secrets and other confidential information entitled to protection, and as such has violated Paragraph 3 of the Agreement. (Id. at ¶ 79.) Paramount seeks damages, injunctive relief, and attorney fees pursuant to the Agreement. (Id. at ¶¶ 82-84.)

As discussed in connection with defendant Zyrek, the Court finds that none of these allegations are sufficient. The claim based on alleged competition must be dismissed as there is no non-compete agreement. (Id., ¶¶ 75, 84.) The claim of solicitation does not identify specific clients or disclose the form or content of the "solicitation communications" for the "purpose of taking" the clients to Traffic Tech and therefore contains insufficient facts. (Id., ¶ 76.) Lastly, the allegation that Filipucci "has used" confidential information and "has direct knowledge of" trade secrets are not sufficient to state a plausible claim since "direct

12

competition" is not barred. (Id., ¶¶ 78-79.) Plaintiff's "information and belief" allegation in ¶ 20 and its allegation of inevitability are insufficient.

**IV.**

Defendants argue that Counts IV, V, and VI provide "zero well-pleaded facts" and only recite the legal elements of the causes of action. (Doc. #31, pp. 2-3.) In Count IV, Paramount alleges tortious interference with a business relationship by Singer, and in Count V Paramount alleges tortious interference with a business relationship by Filipucci. In Count VI, Paramount alleges tortious interference with an advantageous business relationship against Traffic Tech through Singer, Zyrek, and Filipucci acting on behalf of Traffic Tech to interfere with Paramount's clients.

As this Court has recently stated,

> "The elements of tortious interference with a business relationship are (1) the existence of a business relationship (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994) (citation omitted). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." Id., at 815.
>
> "In considering the element of causation, Florida courts have held that the plaintiff

13

> must plead and prove that the defendant manifested a specific intent to interfere with the business relationship." [ ] Thus, even if the defendant is aware of the existing business relationship, the defendant will not be liable for tortious interference with that relationship unless there is evidence that the defendant intended to procure a breach of the contract." <u>Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.</u>, 832 So. 2d 810, 814 (Fla. 2d DCA 2002) (internal citation omitted). "One does not induce another to commit a breach of contract with a third person under the rule stated in this Section when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person." <u>Martin Petroleum Corp. v. Amerada Hess Corp.</u>, 769 So. 2d 1105, 1107 (Fla. 4th DCA 2000) (quoting Restatement (Second) of Torts § 766 cmt. n (1977)).

<u>McGriff Ins. Servs., Inc. v. Littlestone</u>, No. 2:21-CV-480-JES-NPM, 2021 WL 4750646, at *2 (M.D. Fla. Oct. 12, 2021).

### A. Singer and Filipucci

Paramount alleges that Singer and Filipucci directly solicited business from companies already in business relationships with Paramount. As to Singer, Paramount specifies existing business relationships with Beckon Worldwide, Bobst North America, Inc., Blue Grass Protective Films, CleanLife Products, Clean Control Corporation, Butler Performance, and Cemera Parts. Paramount alleges that Singer knew of these business relationships and intentionally interfered by soliciting business from them by email causing damages. (Doc. #26, ¶¶ 76-79.) As to Filipucci, Paramount identifies the same clients, but adds "among many

others." Otherwise, the allegations are virtually identical. (Id., ¶¶ 76-79.)[2]

The Court finds that the counts fail to allege plausible causes of action. There are no allegations that defendants interfered with existing contracts, only that they intended to steal a current customer's future business, not business covered by a current contract.[3] Further, simple knowledge of the relationship is insufficient without a specific intent to interfere with an existing business relationship. The motion to dismiss will be granted without prejudice as to Counts IV and V.

**B. Traffic Tech**

In Count VI, Paramount alleges that it had a business relationship with the clients identified in Count IV, and Singer, Zyrek, and Filipucci had knowledge of the relationships. Paramount alleges that Traffic Tech had knowledge of the relationships through the individual defendants, who acted on its behalf, and Traffic Tech intentionally interfered by soliciting the clients causing damage. (Doc. #26, ¶¶ 81-85.)

> To show tortious interference with an advantageous business relationship "requires (1) the existence of an advantageous business

---

[2] Counts IV and V both start with paragraph 75 and end with paragraph 79. The Court will assume this is a typographical error.

[3] The content of emails from Singer is described in Count I, but not in the general factual allegations and not as adopted in or applied to Count IV or Filipucci. See Doc. #26, ¶ 28.

15

>  relationship under which the plaintiff has
>  legal rights, (2) an intentional and
>  unjustified interference with that
>  relationship by the defendant, and (3) damage
>  to the plaintiff as a result of the breach of
>  the business relationship." Lake Gateway Motor
>  Inn, Inc. v. Matt's Sunshine Gift Shops, Inc.,
>  361 So. 2d 769, 771 (Fla. 4th DCA 1978).

McGriff, at *3.

The allegations are the barest minimum and do not include an allegation that any solicitation was successful and therefore a breach of a business relationship is not alleged. It is also not clear if Traffic Tech directly separately solicited the clients, (doc. #26, ¶ 83) or if Traffic Tech directed the individual defendants to solicit clients from Paramount on its behalf. Therefore, the intent behind the interference is conclusory and not plausibly stated. Lastly, there are no supporting facts as to how Singer, Zyrek, and Filipucci "acted on behalf" of Traffic Tech. (Id., ¶ 82.) The motion to dismiss will be granted as to this Count.

Accordingly, it is now

**ORDERED**:

Defendant's Motion to Dismiss (Doc. #31) is **DENIED IN PART AND GRANTED IN PART**. The motion is denied as to a portion of Count I which alleges a breach of the non-solicitation paragraph of the Agreement and the motion is granted as to the remaining allegations in Count I. The motion is granted as to Counts II, III, IV, V, and VI, also **without** prejudice, and without prejudice to filing a

16

Second Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.

    **DONE AND ORDERED** at Fort Myers, Florida, this __23rd__ day of March 2022.

                                              _____
                                              JOHN E. STEELE
                                              SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record